**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: June 25, 2020.**



_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 19-70106-tmd |
| **Remnant Oil Company, LLC and** | § | Case No. 19-70107-tmd |
| **Remnant Oil Operating, LLC** | § | Chapter 7 |
| | § | |
| | § | (Jointly administered under |
| | § | Case No. 19-70106) |

<u>ORDER GRANTING
MOTION OF RONALD INGALLS, CHAPTER 7 TRUSTEE TO SELL REAL PROPERTY
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES</u>
<u>(Oil and Gas Interests)</u>

CAME ON TO BE HEARD on June 23, 2020, the Motion of Ronald Ingalls, Chapter 11 Trustee to Sell Real Property Free and Clear of Liens, Claims, Interests and Encumbrances ("*Motion*") pursuant to Section 363(b) and (f) of the Bankruptcy Code. The Court finds that such motion should be GRANTED as provided below.

IT IS THEREFORE ORDERED AS FOLLOWS:

1. The Trustee is hereby authorized to sell substantially all of the assets of the Debtors, including the Caprock Oil and Gas Rights, the Wind Rights, the Water Rights, the First Capital Oil and Gas Rights and the North Square Lake Oil and Gas Rights together with certain associated property (the "Oil and Gas Interests") to Acacia Energy Resources, LLC or assigns for $300,000.00 pursuant to the terms of the Asset Purchase Agreement attached hereto.

2. The sale expressly shall not include the Gas Compressor Unit owned by Kodiak Gas Service, LLC.

3. Reservation of Rights for Sureties. Trustee has indicated that buyer is purchasing all of the assets of the debtor including all of its real property and all of the permits associated with the debtor's assets. Trustee has further assured Lexon Insurance Company, (the "Surety") that as part of the sales transaction the buyer has agreed to replace all outstanding bonds of the debtor by the time of the closing of the sale transaction. Surety has issued commercial surety bonds on behalf of the Debtors relating to certain Purchased Assets, and the Debtors' business (collectively, the "Existing Surety Bonds,") and Debtors have entered into, or are potentially otherwise liable under, certain indemnity agreements and/or related agreements with the Surety (collectively, the "Existing Indemnity Agreements"). Notwithstanding anything to the contrary in the Order or the Asset Purchase Agreement, (i) the Trustee and the Surety reserve all rights and defenses with respect to the Existing Indemnity Agreements; (ii) nothing shall permit the transfer of any right to the Purchaser, alter, limit, modify, release, discharge, preclude or enjoin any obligation of the Debtors to any Surety or under the Existing Surety Bonds or the Existing Indemnity Agreements; (iii) nothing herein shall be deemed to provide any Surety's consent to the involuntary substitution of any principal under any Existing Surety Bond; (iv) nothing shall be construed to authorize or permit the assumption and/or assignment of any Existing Surety

Bond, or any Existing Indemnity Agreement, (v) each Existing Surety Bond shall be replaced by the Purchaser by the time of the closing of the sale transaction (collectively, the "Replacement Surety Bonds"), (vi) nothing under this Sale Order or the APA shall obligate any Surety to issue any Replacement Surety Bond to the Purchaser, and (vii) Trustee has agreed, subject to the courts authorization by separate motion, to cure any delinquent premium costs and Loss Adjustment Expenses as set forth in the Existing Indemnity Agreements and Bonds that are or become due until termination or replacement by the buyer.

    4.    Notwithstanding any other provision in the Motion, this Order or any implementing use, sale, or transfer documents (collectively, the "Sale Documents"), any sale, assignment and/or transfer of any interests in contracts, leases, covenants, operating rights agreements, rights-of-use and easements, and rights-of-way or other interests or agreements (a) with the federal government or State of New Mexico; (b) involving (i) federal or New Mexico State land or minerals; (collectively, the "Federal and State Leases"), will be ineffective with respect thereto absent the

consent of the United States or the State of New Mexico, as appropriate. The Debtors and the Buyer agree to comply with all

applicable bankruptcy and non-bankruptcy law with respect to the Federal and State Leases, and nothing in the Sale Documents shall otherwise affect any decommissioning obligations

and financial assurance requirements under the Federal and State Leases as determined by the United States (as provided for under applicable law and the Federal Leases), State of New Mexico (as provided for under applicable law and New Mexico's Oil and Gas Act, NMSA 1978, §70-2-1 *et seq*.), and/or any governmental unit, that must be met by the Debtors and/or the Buyer, as applicable. Moreover, nothing in this Order or the Sale Documents shall be interpreted

to require the United States or the State of New Mexico to novate, approve or otherwise consent to the assumption, sale, assignment and/or transfer of any interests in the Federal or State Leases.

5. For the avoidance of doubt, in order to obtain the consent of the United States, State of New Mexico and/or any governmental unit to the assumption, sale, assignment and/or transfer of any interests in a Federal or State Lease, all existing defaults under such Federal or State Lease, including, without limitation, any outstanding rents or royalties known and satisfactorily documented to date, plus any accrued and unpaid interest lawfully chargeable against any such underpayments of royalty interests, must be paid (i.e., assumed and/or cured, to the extent appropriate), and any reporting requirements or outstanding reports must be submitted and nothing in this Order, or the Sale Documents, shall be interpreted to set Cure Costs for the Federal or State Leases.

6. Notwithstanding any other provision herein the United States, State of New Mexico and/or any other governmental unit will retain, and have, the right to audit and/or perform any compliance review related to the Federal or State Leases and, if appropriate to collect from the Debtors or their successors and assigns (including the Buyer (s) and Reorganized Debtors, if applicable) and under applicable federal regulations any additional monies owed by the Debtors that accrued prior to the transfer or assignment of the Federal or State Leases without those rights being adversely affected by these bankruptcy proceedings. The Debtors, and their successors and assigns (including the Buyer (s) ) and Reorganized Debtors, if applicable)) will retain all defenses and/or rights, other than defenses and/or rights arising from the bankruptcy, to challenge any such determination: provided, however, that any such challenge, including any challenge associated with this bankruptcy proceeding, must be raised in the United States' administrative review process leading to a final agency determination by the

United States Department of the Interior Office of Natural Resources Revenue or the State of New Mexico State Land Office. The audit and/or compliance review period shall remain open for the statute of limitations period applicable by law. In addition, nothing in the Assumption and/or Assignment Order, or Sale Order, or the Purchase and Sale Agreement(s) addresses or shall otherwise affect any plugging and abandonment obligations and financial assurance requirements under the Federal or State Lease(s), as determined by the Department of the Interior of the United States, State Lease(s), as determined by the State of New Mexico State Land Department, that must be met by the Debtors or their successors and assigns ((including the Buyer(s)) going forward.

.   7.   The Trustee is authorized to execute all sale documents on behalf of the Seller.

8.   The sale shall be free and clear of liens, claims, interests and encumbrances, except as provided herein.

9.   The following liens shall be paid at closing:

Liens of ad valorem taxing entities.

10.   The sale shall be made subject to the liens securing the First DIP Loan, the Second DIP Loan, the Third DIP Loan, the $757K Note, the First Capital Note and contingent liabilities to the U.S. Department of the Interior and other governmental entities related to owning, operating and plugging the wells. Nothing herein shall constitute a determination as to the extent, priority or validity of any of the three DIP loans or the liens securing the same.

11.   The ad valorem taxes for year 2020 pertaining to the subject property shall be prorated in accordance with the Asset Purchase Agreement and shall become the responsibility of the Purchaser and the year 2020 ad valorem tax liens shall be retained against the subject property until said taxes are paid in full.

12. All other liens, claims, interests and encumbrances will attach to the proceeds from the sale to the same extent, priority and validity as existed on the petition date, provided, however, that such interests shall be junior to Chapter 7 expenses of administration.

13. The Trustee shall file a Report of Sale upon closing.

###

Order Submitted By:

Stephen W. Sather
Barron & Newburger, P.C.
7320 N. MoPac Expwy., Suite 400
Austin, TX 78731